IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **LEWIS C. TERRY, Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:06-0049 |
| | ) | |
| **MARTY C. ANDERSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Plaintiff filed a Complaint on January 19 2006, indicating his intention to proceed in this matter pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (Document No. 1.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.)

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 15, 1995, Plaintiff was convicted in the United States District Court for the Western District of Virginia of violating the Assimilative Crimes Act [ACA], 18 U.S.C. § 13(a), and for using a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c). United States v. Terry, Criminal Case No. 7:94-0107 (W.D.Va. June 5, 1995). On June 5, 1995, the District Court dismissed the Section 924 count on double jeopardy grounds and sentenced Plaintiff to a 62-

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

month term of imprisonment to be followed by a three-year term of supervised release. Id., Document No. 22. Plaintiff filed an appeal challenging the ACA count, and the government filed an appeal challenging the dismissal of the Section 924 count. United States v. Terry, 86 F.3d 353 (4th Cir. 1996). The Fourth Circuit reversed the dismissal of the Section 924 count, ordered that the conviction be reinstated, and vacated Plaintiff's sentence, and remanded the case for resentencing.[2] Id. at 355. On September 11, 1996, the District Court resentenced Plaintiff to a 24-month term of imprisonment to be followed by a thirty-six-month term of supervised release as to the ACA count, and to a 60-month term of imprisonment, to run consecutively, as to the Section 924 count. United States v. Terry, Criminal Case No. 7:94-0107, Document Nos. 40 and 48. Plaintiff filed his Notice of Appeal on September 30, 1996.[3] Id., Document No. 42. On December 10, 1997, the Fourth Circuit affirmed the judgment of the District Court and dismissed Plaintiff's appeal. United States v. Terry, 131 F.3d 138 (4th Cir. 1997)(unpublished opinion). Plaintiff subsequently filed a petition for writ of certiorari. On June 22, 1998, the United States Supreme Court denied Plaintiff's petition. Terry v. United States, 524 U.S. 940, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998).

On June 23, 1999, Plaintiff filed in the Western District of Virginia a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Terry v. United States, Civil Case No. 7:99-00454 (W.D.Va. Nov. 26, 1999). The District Court denied

---

[2] The Fourth Circuit noted that the reinstatement of the conviction on the Section 924 count would affect how the sentence for the ACA count was calculated. *United States v. Terry*, 86 F.3d at 358-59.

[3] Plaintiff argued that the "ACA was improperly applied in his case, that a crime committed in violation of the ACA is not a federal crime for 18 U.S.C. § 924(c)(1) purposes, and that his indictment was defective." *United States v. Terry*, 131 F.3d 138 (4th Cir. 1997)(unpublished opinion).

Plaintiff's Motion on November 26, 1999. Id., Document Nos. 10 and 11. On January 10, 2000, Plaintiff filed his Notice of Appeal. Id., Document No. 12. The Fourth Circuit denied Plaintiff's appeal on March 31, 2000. United States v. Terry, 210 F.3d 363 (4th Cir. 2000)(unpublished opinion).

Plaintiff was subsequently released from custody and began his thirty-six-month term of supervised release. On February 10, 2004, the government filed a Motion to Revoke Supervised Release. United States v. Terry, Criminal Case No. 7:94-0107, Document No. 54. On June 4, 2004, the District Court revoked Plaintiff's supervised release and sentenced Plaintiff to "12 months and 1 day as to each of counts 1 and 2 to be served concurrently with each other and consecutively to any other state or federal sentence." Id., Document 65. The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from federal custody on April 18, 2005.

As stated above, Plaintiff filed his Complaint initiating this action on January 19, 2006. (Document No. 1.) Plaintiff states that he was "convicted on a State charge of driving after being declared a habitual offender while D.U.I. on 6/1/04, which caused a violation of his supervised release." (Document No. 2, p. 3.) Plaintiff acknowledges that proceedings were then initiated in federal court to revoke his supervised release. (Id., pp. 3 - 4.) Plaintiff states that the District Court imposed a sentence of "12 months and 1 day, the one day added for the sole purpose to be given 54 days good time credit." (Id., p. 4.) Plaintiff, however, alleges that Warden Anderson incorrectly calculated his good conduct time. (Id.) Specifically, Plaintiff states that he has now completed his sentence and "Warden Marty C. Anderson at FCI Beckley has held Plaintiff Terry against his will to an additional 7 days imprisonment due to error of implementation from a new law sentence calculation procedure (P.L.R.A.), which violates the sentence imposed, as well as ex post facto

3

clause of the federal constitution Art. 1 § 10." (Id.) Plaintiff contends that he was entitled to 54 days of good time credit because he was sentenced to twelve months and one day. (Id., p. 8.) Plaintiff complains that Warden Anderson "refused to correct or even address the issue after it was brought to his attention by plaintiff, using administrative remedy." (Id., p. 6.) Thus, Plaintiff argues that Warden Anderson acted with deliberate indifference "by not recognizing the sentence imposed, and refusing to correct [the] error . . . ." (Id., p. 5.) Next, Plaintiff claims that Warden Anderson retaliated against him because Movant filed administrative remedies. (Id., p. 9.) Specifically, Plaintiff states as follows:

> As of the writing of this cause, the plaintiff will be released to the custody of the Department of Corrections of the State of Virginia in less than 48 hours. The transfer to the D.O.C. was caused by vindictiveness of staff to plaintiff for his persistence in filing administrative remedies on this cause.
>
> The Plaintiff was to be transferred to the custody of Bedford, Co., Va. for completion of State related sentence with the consideration of home confinement by the sentencing judge. But now by oversight, or retaliation, FCI Beckley sent my action detainer letter to D.O.C., not Bedford Co. (my original sentencing jurisdiction) and now the D.O.C. interprets my sentence in State to be served consecutive to my now almost expired federal term.

(Id., pp. 9 - 10.) Finally, Plaintiff contends that the conditions of confinement at FCI Beckley constitute cruel and unusual punishment. Specifically, Plaintiff alleges as follows:

> We have been on lock down for the past 72 hours for a gang related problem that no one but staff seems to know about. No phone, no TV, no recreation, and our visitors of family members and loved ones are turned away after driving hundreds of miles. Most of the food is not eatable, and the time between the last two meals was 17 ½ hours (from 4/16 at 3:00 p.m. until 4/17 at 8:30 a.m.). Last meal was two boiled eggs with two pieces of hard toast unwrapped in a paper bag. No one has had a shower in the past three days.

(Id., p. 12.) Therefore, Plaintiff requests monetary and punitive damages in the amount of $750,000 for his "loss of liberty (7 days false imprisonment), emotional distress, duress, and family emotional

problems." (Id., p. 7 and Document No. 1, p. 4.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. In screening qualifying cases under 28 U.S.C. § 1915A to determine whether they state claims for which relief can be granted, the undersigned is mindful of the United States Supreme Court's statement in Bell Atlantic Corporation v. Twombly, __U.S. __, 127 S.Ct. 1955, 1964 - 1965, 167 L.Ed.2d 929 (2007)(Citations omitted) as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, * * * a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)(on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegations.'). Factual allegations must be enough to raise a right to relief above the speculative level * * * on the assumption that all allegations in the complaint are true (even if doubtful in fact) * * *.

The undersigned is further mindful that where a *pro se* Complaint can be remedied by an

amendment, the District Court may not dismiss the Complaint, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## **DISCUSSION**

The allegations stated in Plaintiff's Complaint of violations of his constitutional rights are cognizable under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[4] The United

---

[4] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens*

States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

**A.     Sentencing Calculation.**

Plaintiff alleges that he is entitled to damages because Warden Anderson incorrectly calculated Plaintiff's good conduct time [GCT], which improperly extended the length of his sentence by seven days. (Document No. 2, pp. 3 - 8.) Specifically, Plaintiff claims that the calculation of GCT should be based on the length of the sentence imposed as opposed to the actual time served. (Document No. 2.) Under Plaintiff's calculation, he claims that he was entitled to 54 days of good time credit, rather than 47 days as calculated by the BOP. (Id., p. 4.) Title 18, U.S.C. § 3624(b) vests the BOP with the discretionary authority to award and calculate good conduct time for federal prisoners. Section 3624(b) provides, in pertinent part, as follows:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54

---

as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

7

      days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term . . . . [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1). The BOP interprets Section 3624(b) as directing that each eligible federal inmate earn 54 GCT credits for each full year served, with a prorated award of GCT for the last partial year served. See 28 C.F.R. § 523.20.[5] The BOP's formula for calculating GCT credits is detailed in its Program Statement 5880.28, Sentence Computation Manual CCCA.[6] Thus, under the

---

[5] Title 28, C.F.R. § 523.20 provides:

      Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after November 1, 1987 but before April 26, 1996, an inmate earns 54 days credit toward service of sentence (good conduct time credit) for each year served. This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year. The amount to be awarded is also subject to disciplinary disallowance (see tables 3 through 6 in §541.13 of this chapter). Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after April 26, 1996, the Bureau shall consider whether the inmate has earned, or is making satisfactory progress (see § 544.73(b) of this chapter) toward earning a General Educational Development (GED) credential before awarding good conduct time credit.
      (a) When considering good conduct time for an inmate serving a sentence for an offense committed on or after April 26, 1996, the Bureau shall award:
      (1) 54 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or
      (2) 42 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.
      (b) The amount of good conduct time awarded for the year is also subject to disciplinary disallowance (see tables 3 through 6 in § 541.13 of this chapter).

28 C.F.R. § 523.20.

[6] Pursuant to P.S. 5880.28, the GCT formula is based on dividing the maximum number of days that can be awarded for a one year service of sentence, 54 days, by the number of days that must be served before the credit may be awarded, 365 days, or one year. P.S. 5880.23, pp. 1-44,

BOP's interpretation, inmates are not awarded GCT credit on any time not actually served in prison.

Citing White v. Scibana, 314 F.Supp.2d 834 (W.D. Wisc. 2004), Plaintiff contends that the BOP's interpretation of Section 3624(b) is unreasonable and has resulted in his serving an additional seven days of imprisonment. (Document No. 2, p. 15.) In White, the District Court concluded that Section 3624(b)(1) was not ambiguous and therefore, the BOP did not possess discretion to interpret the statute. Id. The Court focused on the meaning of the statutory phrase "term of imprisonment," and reasoned that because the phrase means "sentence imposed" in the first two instances of its use in Section 3624(b)(1), then the statute must be read as a whole such that the phrase means "sentence imposed" with respect to the award of good conduct time. Id. at 838 - 39. The Seventh Circuit however, reversed the District Court's opinion, finding that Section 3624(b) is ambiguous and the BOP's interpretation of the statute is permissible and reasonable. White v. Scibana, 390 F.3d 997 (7th Cir. 2004). Specifically, the Seventh Circuit held:

> [I]f "term of imprisonment" refers to the sentence imposed, it becomes impossible to award the credit based on an annual year-end assessment of the prisoner's behavior. And such retrospective annual assessment and award of credit appears to be at the core of what the good-time statute is all about. To interpret "term of imprisonment" as "sentence imposed" for purposes of awarding good-time credit would entitle an inmate to receive credit for good conduct in prison for time - - perhaps several years of time - - that he was not in prison.

Id. at 1002.

The majority of the Circuit Courts of Appeal that have addressed the issue raised by Plaintiff, including the Fourth Circuit, have considered Plaintiff's argument and have rejected it, primarily

---

44A, 45. This amount equals 0.148 day of credit for each day actually served during good behavior. *Id*. Therefore, a prisoner must serve seven days to earn one full day of credit (0.148 x 7 = 1.036, or 1 day of credit). This formula is then applied to prorate partial years of service, which is further explained in the Program Statement. *See* P.S. 5880.28, pp. 1-45-61.

9

concluding that although Section 3624(b) is ambiguous, the BOP's interpretation is a permissible and reasonable interpretation of the statute. See Yi v. Adams, 412 F.3d 526 (4th Cir. 2005); O'Donald v. Johns, 402 F.3d 172, 174 (3d Cir. 2005)(Finding that "the BOP's interpretation comports with the language of the statute, effectuates the statutory design, establishes a 'fair prorating scheme,' enables inmates to calculate the time they must serve with reasonable certainty, and prevents certain inmates from earning GCT for time during which they were not incarcerated."); Perez-Olivo v. Chavez, 394 F.3d 45, 53 (1st Cir. 2005)(In finding the BOP's interpretation reasonable, the Court focused on the statutory language allowing the BOP to award GCT only when the prisoner has displayed good behavior. The Court reasoned that this language evidences "Congress' clear intent that the BOP evaluate a prisoner's conduct during his time in prison, making it reasonable for the BOP to require that time actually be served in order for the conduct during that time to be evaluated."); Brown v. McFadden, 416 F.3d 1271 (11th Cir. 2005)(Holding that "although the language of the statute is ambiguous, the BOP's interpretation of it is reasonable."); Brown v. Hemingway, 2002 WL 31845147 (6th Cir. Dec. 16, 2002)(Finding that the BOP's interpretation of Section 3624 was reasonable in light of the plain statutory language allowing "54 days as the basis for credit, not the 15% figure."); Pacheco-Camacho v. Hood, 272 F.3d 1266, 1270-71 (9th Cir. 2001), cert. denied, 535 U.S. 1105, 122 S.Ct. 2313, 152 L.Ed.2d 1067 (2002)(Finding that the BOP's interpretation "establishes an effective and fair prorating scheme, enabling inmates to calculate with reasonable certainty the end of their imprisonment, while preventing certain prisoners from receiving disproportionate good time credits merely because their sentence happens to equal a year and a day."); see also, Stein v. Gutierrez, __ F.Supp.2d __, 2005 WL 1530253 (N.D. W.Va. June 23, 2005); Esposito v. Ashcroft, 2005 WL 119872 (N.D. W.Va. Jan. 14, 2005); Loeffler v. Federal

Bureau of Prisons, 2004 WL 2417805 (S.D. N.Y. Oct. 29, 2005); Pasciuti v. Drew, 2004 WL 1247813 (N.D. N.Y. Jun. 2, 2004); Graves v. Bledsoe, 334 F.Supp.2d 906 (W.D. Va. 2004).

In Yi, the petitioner argued that because the phrase "term of imprisonment" as used in the first two instances of Section 3624(b) refers to the sentence imposed, then under the canons of statutory construction, the phrase must mean the same when used in the third instance. The Fourth Circuit found that although the petitioner's construction of the statute was plausible, the statute's language did not "unambiguously compel[] this interpretation alone." Yi, 412 F.3d at 531. The Court stated that "to award credit for time not served would conflict with Congress' intent that prisoners 'earn' credit under the GCT statute by 'display[ing] exemplary compliance with institutional disciplinary regulations' during the year." Id. at 531 - 32. After finding no resolution in the statute's ambiguity by reviewing the legislative history of the GCT statute, the Fourth Circuit concluded that the BOP's interpretation is reasonable:

> We conclude that the BOP has reasonably interpreted the statute so as to require the calculation of GCT based upon the inmate's time served. The view that a prisoner should accrue 54 days of credit for each 365 days of good behavior is consistent with Congress' mandate that the BOP reward a prisoner "at the end of each year" for good behavior demonstrated "during that year." 18 U.S.C. § 3624(b)(1). This language reflects "a clear congressional directive that the BOP look retroactively at a prisoner's conduct over the prior year, which makes it reasonable for the BOP only to award GCT for time served." Perez-Olivo, 394 F.3d at 53. Accordingly, we defer to the BOP's reasonable construction of 18 U.S.C. § 3624(b). Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778.

Id. at 534.

Based on the foregoing, the undersigned finds that Warden Anderson properly calculated Plaintiff's GCT based upon time served rather than the sentence imposed.[7] Accordingly, Plaintiff's

---

[7] Although not alleged by Plaintiff, the undersigned finds that the rule of lenity is inapplicable in this instance. *See Yi v. Federal Bureau of Prisons*, 412 F.3d at 535. The rule of lenity

11

claim that his sentence was improperly extended by seven days is without merit.

Furthermore, Plaintiff has not demonstrated a violation of the *Ex Post Facto* Clause. Plaintiff alleges that an *ex post facto* violation occurred because "F.C.I. Beckley erroneously used a P.L.R.A. sentence calculation procedure" which resulted in "an additional 7 days of imprisonment." Document No. 2, pp. 4 - 7. The *Ex Post Facto* Clause provides that "no State shall ... pass any ... ex

---

is a rule of statutory construction which requires that ambiguities in criminal or punitive statutes must be resolved in favor of the Plaintiff. *See e.g., United States v. One 1973 Rolls Royce*, 43 F.3d 794, 819 (3d Cir. 1994). The rule applies only if ambiguity remains after the Court has applied all established principles of statutory construction. *United States v. R.L.C.*, 503 U.S. 291, 293, 112 S.Ct. 1329, 1332, 117 L.Ed.2d 559 (1992)("No ambiguity about the statute's intended scope survives the foregoing analysis, but if any did, the construction yielding the shorter sentence would be chosen under the rule of lenity."); *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991)(Statute must be ambiguous for rule of lenity to apply.). In *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980), the Supreme Court defined the policy of lenity to mean "that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." In the absence of a statutory ambiguity, "a court may not manufacture an ambiguity in order to defeat Congress' intent." *United States v. Blannon*, 836 F.2d 843, 845 (4th Cir.) *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). In *Yi*, the Fourth Circuit determined that the rule of lenity was inapplicable to the issue at hand for two reasons:

> First, BOP Program Statement 5880.28 and 28 C.F.R. § 523.20 provide the public with sufficient notice that GCT shall be awarded based upon time actually served. Thus, while the language of the statute is ambiguous, the Program Statement and the regulation "give[] the public sufficient warning to ensure that nobody mistakes the ambit of the law or its penalties." *Pacheco-Camacho*, 272 F.3d at 1272; *see also Perez-Olivo*, 394 F.3d at 53-54 (holding that rule of lenity does not apply); *O'Donald*, 402 F.3d at 174 (same). Second, 18 U.S.C. § 3624 is a statute that Congress has charged the BOP to administer. Rather than apply a presumption of lenity to resolve the ambiguity, *Chevron [U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)], requires that we *defer* to the agency's reasonable construction of the statute.

*Yi*, 412 F.3d at 535. Having determined that the BOP's interpretation is a reasonable and permissible construction of the law in accord with the legislative intent, the undersigned concludes that the rule of lenity has no application to the analysis of the propriety of the BOP's interpretation.

12

post facto law." U.S. Const. Art. I, § 10. As the Supreme Court has explained, "[t]o fall within the *ex post facto* prohibition, a law must be retrospective-that is, it must apply to events occurring before its enactment-and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). Plaintiff appears to be asserting that under the Sentencing Reform Act [SRA], his GCT would have been calculated based upon the length of his sentence, not the time he actually served in prison.[8] The undersigned finds this argument to be without merit. First, a review of Plaintiff's exhibits reveals that Plaintiff's sentence was classified as a SRA sentence. (Document No. 2, pp. 16 - 20.) Next, even assuming that Plaintiff's sentence was classified under the Prison Litigation Reform Act [PLRA], Plaintiff's GCT was properly calculated based upon actual time served. Section 3624(b), as stated under the SRA and PLRA, provides that "credit for the last year or portion of a year of the term of imprisonment shall be prorated . . .." Accordingly, Plaintiff's *ex post facto* claim should be dismissed because Plaintiff's punishment was not enhanced and the definition of his criminal conduct was not changed.

**B.      Retaliation.**

Plaintiff alleges that his "transfer to the D.O.C. was caused by vindictiveness of staff to plaintiff for his persistence in filing administrative remedies on this cause." (Document No. 2, p. 9.) Prison officials may not retaliate against inmates for their exercise of a constitutional right. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); American Civil Liberties Union of Md, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993)(citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S.

---

[8] Thus, Plaintiff asserts that he would have received 54 days of GCT under the SRA.

274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Fourth Circuit has held that an inmate's claims of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted). To prevail upon a claim of retaliation, the inmate must specifically demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). Essentially, the inmate must first demonstrate that he engaged in protected conduct and second that his protected conduct motivated the retaliatory act.

To the extent that Plaintiff alleges retaliation in response to his filing of administrative remedies, the undersigned will find that he has satisfied the first part of the analysis. "The First Amendment grants the rights to free speech and to seek redress of grievances. These rights, to a limited extent, exist in a prison setting." Gullett v. Wilt, 869 F.2d 593, 1989 WL 14614 ** 2 (4th Cir. (Md.) Feb. 21, 1989)(unpublished)(citing Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). Plaintiff has not, however, demonstrated that his transfer to the Virginia Department of Corrections was motivated in any manner by his filing of administrative remedies. The showing of adversity is an essential element to any retaliation claim. See American Civil Liberties Union v. Wicomico County, 999 F.2d at 785. The undersigned finds that the record clearly establishes that Plaintiff was transferred to the custody of the Virginia Department of Corrections for legitimate, nonretaliatory reasons. (Document No. 2, pp. 23 - 24.) The Western District of Virginia ordered that any State sentence was to run consecutive to Plaintiff's federal sentence.[9]

---

[9] On June 4, 2004, the District Court revoked Plaintiff's supervised release and sentenced Plaintiff to "12 months and 1 day as to each of counts 1 and 2 to be served concurrently with each other and consecutively to any other state or federal sentence." *United States v. Terry*, Criminal Case

14

United States v. Terry, Criminal Case No. 7:94-0107, Document 65. Additionally, Plaintiff acknowledges the State detainer requiring his transfer to State custody upon completion of his federal sentence. (Document No. 2, p. 10.) Plaintiff merely argues that he should have been "transferred to the custody of Bedford, Co., Va. for completion of State related sentence."[10] (Id.) Therefore, Plaintiff's bare assertions of retaliation do not establish a claim of constitutional magnitude.

**C.    Eighth Amendment.**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. Plaintiff contends that he was subjected to cruel and unusual punishment during a 72-hour institutional lock-down. (Document No. 2, p. 12.) Specifically, Plaintiff alleges that inmates at FCI Beckley were subjected to 72-hours of lock-down, which resulted in "no phone, no TV, no recreation, and [no] visitors." (Id.) Plaintiff further complains that the food provided during lock-down was "not eatable" and inmates were deprived of showers. (Id.)

As a general matter, the Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th

---

No. 7:94-0107, Document 65.

[10] The undersigned notes that Plaintiff does not possess a liberty interest in serving his term of imprisonment at any particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983)("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a state.").

Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298, 111 S.Ct. 2321 (citing

Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") The touchstone is the health of the inmate.

     Having carefully considered Plaintiff's allegations, the undersigned finds that Plaintiff has failed to establish an Eighth Amendment violation. Prison officials cannot be held liable unless they knew of and disregarded an excessive risk to an inmate's health or safety. See Farmer, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Plaintiff must then produce evidence of serious or significant physical or emotional injury resulting from the challenged condition. See Strickler, 989 F.2d at 1379. During the 72-hour institutional lock-down, Plaintiff claims that he was deprived of phone access, television, showers, recreation, visitation, and eatable food. An inmate, however, is not entitled to relief simply because he is exposed to uncomfortable, restrictive, or inconvenient conditions of confinement because such conditions "are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399. Although allegations of inadequate food, infrequent showers, and the lack of exercise may state cognizable claims under certain circumstances, the deprivation must be serious. See Yarborough v. Robinson, 166 F.3d 337 (4th Cir. 1998)(the denial of an inmate's right to shower and exercise for four days does not constitute an Eighth Amendment violation); Shakka v. Smith, 71 F.3d 162, 167 - 68 (4th Cir.

1995)(no Eighth Amendment violation where inmate was given water and cleaning supplies but denied a shower for three days after having human excrement and urine thrown on him); and Harrison v. Stalling, 898 F.2d 145 (4th Cir.) cert. denied, 498 U.S. 832, 111 S.Ct. 97, 112 L.Ed.2d 68 (1990)(claim of cold food and insufficient food dismissed where there was no factual allegation of adverse effects caused by the condition of the food). The undersigned finds that the short-term lock-down did not deprive Plaintiff of "the minimal civilized measure of life's necessities." See Clifton v. Robinson, 500 F. Supp. 30 (E.D. Penn. 1980)(no Eighth Amendment violation where a five-day prison lockup deprived inmates of visitation, phone calls, showers, exercise, change of clothes and bedding, legal and medical services, religious and education activities, and the service of meals and hygienic conditions of cells fell below prison norm). Plaintiff has not shown that he suffered any serious or significant physical or emotional injury as a result of the 72-hour institutional lock-down. Plaintiff merely makes a conclusory statement that the conditions of lock-down were cruel. Therefore, Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted.

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal analysis and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint (Document No. 1.) and **REMOVE** the matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and

72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation, mail a copy to Plaintiff, who is acting *pro se*, and deliver a copy to counsel of record.

Date: January 15, 2009.

R. Clarke VanDervort
United States Magistrate Judge